HARRIS, Judge.
Allen Himebaugh purchased a lot in an unrecorded subdivision in 1988. The purchase was subject to a Declaration of Restrictions which provided:
13. The Developers propose to maintain the streets, lakes, to maintain all the grounds that are to be used by all lot owners in common and to pay taxes and insurance on the above property. For that purpose, all lots included and shown upon the Plat of said subdivision, shall be subject to a monthly charge in order to insure the establishment and maintenance and operation of said common facilities. Beginning with the 1st of March, 1971, the monthly charge shall be $5.00 per lot. Future charges for such service and maintenance shall be based upon the cost of living as of March, 1971, recorded with the U.S. Department of Interior or other U.S. Departments, recording costs of living index increases and/or as the value of the American dollar decreases and/or the cost recorded for the year 1971 increase. To insure the payment of said monthly charges, the owners of the respective lots in said Subdivision, or their heirs, successors, legal representatives, grantees or assignees, who may acquire title to any lot, block or parcel of land, do hereby give and grant unto the developers or their successors a lien upon the respective lots for such charge; the developers shall have the right to enforce the payment thereof in a Court of Law and all costs thereof shall be paid by the owners, including a reasonable attorney’s fee.
14. The planned golf course, club house, swimming pool and marina at PORT BUE-NA VISTA will be owned and operated by a separate company now being formed. Membership will be by invitation only and not dependant upon ownership of any lots or parcels.
When Himebaugh failed to pay his monthly assessment, the successor to the developer filed a lien against his property. Himebaugh then filed this declaratory action to determine his obligation to pay the assessments and a counterclaim was filed to enforce the lien and to award attorney’s fees. The trial court determined that the restrictions were clear and unambiguous, imposed the obligation to pay the assessments herein, enforced the lien and awarded attorney’s fees. We affirm.
Himebaugh contends that the restrictions contain latent ambiguities concerning which lands are subject to common use and as to whether additional fees may be charged for “recreational” property. Although the restrictions are not a model of draftsmanship, we agree with the trial court that their meaning is clear. In order to defray the expense of the operation and maintenance of the “streets, lakes, ... [and] grounds that are to be used by all lot owners in common” and to pay the taxes and insurance on such property, a monthly fee of $5.00 per lot based on the value of the dollar in 1971 would be a lienable obligation on each lot. This $5.00 fee would increase each year depending on the cost of living index. Although Hime-baugh states in his brief that “The total fee increases and additional fees imposed appear to have exceeded substantially the rate of increase in the cost of living,” there is no support in the record for this proposition. Indeed, while the reference in the record referred to by Himebaugh reflects that an increase was based on an increase in the costs of the services rather than an increase in the general cost of living index, there is no showing — indeed no claim — that the increase is not consistent with any increase in the consumer price index. The record reflects that the only adjustment in the fee requested by the lot owners was a small decrease based on their claim that a portion of the common property had been conveyed into private ownership. There is no claim that such *21 transfer impacted on the cost of the maintenance obligation imposed by the restriction.
Himebaugh contends that the original restrictions do not permit a distinction between “recreational” and “common” facilities. We disagree. Paragraph 14 makes it clear that the golf course, club house, swimming pool and marina, once completed, were not “common” facilities and that lot ownership did not entitle one to the use of these facilities. Furthermore, Himebaugh’s contention that Paragraph 14 does not specifically mention that fees would be charged is irrelevant. Since this paragraph puts purchasers on notice that a third party will own these facilities free from any obligation to purchasers, it should be apparent that the restrictions are not intended to control or limit the relationship between that third party and those that it permits to use its facilities.
We agree with the trial court that the restrictions are not ambiguous. Himebaugh admits that he has not paid the assessments. He has not shown that the assessments are not for the maintenance of the common property and he has not shown that the amount exceeds the cost of living increases since 1971. We affirm the trial court’s enforcement of the lien.
We reverse, however, the trial court s failure to assess attorney’s fees in accordance with the restrictions. Courts have no discretion to decline to enforce contract provisions for awards of attorney’s fees. Sybert v. Combs, 555 So.2d 1313 (Fla. 5th DCA 1990).
AFFIRMED in part; REVERSED in part and REMANDED.
GOSHORN and ANTOON, JJ., concur.